**Rashad D. PRICE, Plaintiff,**

v.

**Brian OWENS, Commissioner; and Belinda Davis, Warden, Defendants.**

**Civil Action No. 1:09–CV–0493–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

April 28, 2009.

July 8, 2009.

Order Denying Reconsideration July 8, 2009.

C. Allen Garrett, Jr., Charles Hollingsworth Hooker, II, Kilpatrick Stockton, Gerald R. Weber, Atlanta, GA, for Plaintiff.

Joseph J. Drolet, Paige Elizabeth Boorman, Attorney General's Office, Atlanta, GA, for Defendants.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

Plaintiff, Rashad D. Price, presently confined in the Dooly State Prison in Unadilla, Georgia, has filed this civil rights action. (Doc. 1). This matter is now before the Court for consideration of Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6).

### I. Background

Plaintiff states that he is an "Afrikan Centered Culturalist" or "Rastafarian," and brings, through counsel, this civil rights action, pursuant to 42 U.S.C. § 1983, against Brian Owens, the Commissioner of the Georgia Department of Corrections, and Belinda Davis, the Warden of Dooly State Prison, where Plaintiff is incarcerated. (Doc. 1 at 1–2). Plaintiff states that "[r]efraining from cutting one's hair is a vital religious practice in the Rastafarian faith," which he has observed

by wearing his hair in uncut dreadlocks since he became a Rastafarian in 1993 until 2001, when defendants forcibly cut his hair. (*Id.* at 2).

Plaintiff states that on March 30, 2001, the Fulton County Superior Court "accepted a negotiated plea agreement in criminal action No. 00SC0011489, sentencing [Petitioner] to a term of fifteen years imprisonment." (*Id.*). As part of his negotiated plea, the Fulton County Superior Court ordered that Plaintiffs hair "not be cut," consistent with his religious beliefs. (*Id.* at 2–3). Despite this order and Plaintiff's protests, defendants have repeatedly cut his hair in conformity with the Georgia Department of Corrections' grooming policy. (*Id.*). According to Plaintiff, Defendant Owens is responsible for enforcing this grooming policy, which requires male inmates to have a conventional haircut, with hair no longer than three inches. (*Id.* at 2; Exh. C at 2). The grooming policy allows mustaches, but permits beards only when medically indicated. (*Id.*).

Plaintiff claims that, despite his repeated requests, the Georgia Department of Corrections refused to provide him the forms required by O.C.G.A. § 9–10–14 to file a civil action. (Doc. 1 at 4). Thus, on November 7, 2005, Plaintiff filed a handwritten *pro se* civil action in the Superior Court of Fulton County, seeking a writ of mandamus to enforce his sentencing order and, alternatively, arguing that the Georgia Department of Corrections' grooming policy infringed upon his rights to equal protection and the free exercise of religion. (*Id.*). The Superior Court of Fulton County granted Plaintiff's petition, but the Georgia Supreme Court reversed, holding that the trial court erred in failing to dismiss Plaintiff's petition without prejudice because it was not filed on the proper form required by § 9–10–14(b). (*Id.*, Exhs. C–D). The Georgia Supreme Court specifically held that "the record does not sup-

port [Plaintiff's] assertion that he was denied access to the appropriate form." *Donald v. Price*, 283 Ga. 311, 658 S.E.2d 569, 570 (2008).

Plaintiff argues that defendants are collaterally estopped from cutting his hair because the issue was determined in his criminal case in the Superior Court of Fulton County. (Doc. 1 at 6). Plaintiff asserts that the grooming policy violates his rights to equal protection and the free exercise of religion under the First and I Fourteenth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. (*Id.*). Plaintiff seeks equitable relief, as well as attorneys fees and costs. (*Id.* at 7–8).

Defendants have filed a pre-answer motion to dismiss pursuant to Rule 12(b)(6). (Doc. 6). In this motion, Defendants first assert that, to the extent that Plaintiff sued Defendants in their individual capacities, Plaintiff's RLUIPA claims should be dismissed. (*Id.*, brief at 1–2). Next, Defendants argue that Plaintiff's claims under both § 1983 and the RLUIPA are barred by the two-year (or possibly four-year for the RLUIPA claim) statute of limitations because the challenged grooming policy was first applied to Plaintiff on his incarceration in March of 2001, and he did not file this suit until February 24, 2009, nearly eight years later. (*Id.* at 2–4).

Defendants further assert that each of Plaintiff's claims are subject to dismissal, even assuming that they are properly before this Court. Defendants first contend that Plaintiff's RLUIPA claim fails because: (1) the sincerity of his religious beliefs is in doubt given that he claimed to be a Muslim, not a Rastafarian, at the time of his guilty plea; and (2) the grooming policy is the least restrictive means to achieve the prison's compelling state inter-

ests in security and identification of inmates. (*Id.* at 4–8). Defendants argue that Plaintiff's collateral estoppel claim fails because: (1) a sentencing court lacks the authority to regulate the treatment of inmates; (2) the criminal case did not involve the same parties; and (3) the issue of whether Defendant's enforcement of the grooming policy violated Plaintiff's constitutional or other federal rights was not actually litigated in the criminal case. (*Id.* at 8–11). Finally, Defendants contend that Plaintiff's: (1) First Amendment claim fails because the grooming policy is rationally related to achieve legitimate penalogical interests; and (2) equal protection claim fails because he has not shown that he is similarly situated to female inmates or that Defendants acted with a discriminatory purpose in maintaining a hair length policy for male inmates. (*Id.* at 12–14).

Plaintiff responds first that he has not asserted claims against Defendants in their individual capacities. (Doc. 9 at 2). Next, Plaintiff argues that his claims are not time-barred because: (1) the continuing tort doctrine applies; and (2) the statute of limitations should be equitably tolled based on his attempts to obtain the form required by § 9–10–14 to file a suit and his subsequent *pro se* state court action. (*Id.* at 3–6). Plaintiff asserts that he has stated a *prima facie* RLUIPA claim because his attorney's misstatement during sentencing does not show that his religious beliefs are insincere, and the grooming policy is not the least restrictive means to achieve a compelling state interest. (*Id.* at 7–11). As to his collateral estoppel claim, Plaintiff maintains that: (1) sentencing courts have authority to exert control over a prison to ensure an inmate's constitutional rights are protected; and (2) collateral estoppel applies even if the parties and specific claims are not identical. (*Id.* at 11–17). Finally, Plaintiff maintains that Defendants' arguments concerning his

First Amendment claim is premature, and Plaintiff has pleaded sufficient facts to grant relief on his equal protection claim. (*Id.* at 17–19).

Defendants reply that: (1) the entire action is time-barred because Plaintiff knew of the act leading to his injury in 2001; (2) the continuing tort doctrine does not apply because "it is the application of the grooming policy to Plaintiff that forms the basis of his claim, not that his hair has repeatedly been cut or that each individual hair cut is a separate and distinct injury"; and (3) equitable tolling does not apply because the Georgia Supreme Court found no support for Plaintiff's claim that prison officials denied him access to the appropriate form, and, in any event, denial of access to that form did not prevent Plaintiff from filing a federal suit because § 9–10–14 only applies to suits filed in state court. (Doc. 11, brief at 2–5). Defendants next reiterate their argument that, as to Plaintiff's RLUIPA claim, the grooming policy is the least restrictive means to achieve the prison's compelling state interests in security and identification of inmates. (*Id.* at 6–8). Defendants assert that the sentencing court had no authority to allow Plaintiff to violate the grooming policy. (*Id.* at 10). Finally, Defendants contend that the sentencing order did not involve the same parties or privies and did not actually litigate the issue presented in this case. (*Id.*).

## II. *Motion to Dismiss Standard*

When considering a Rule 12(b)(6) motion to dismiss, a federal court is required to accept as true "all facts set forth in the plaintiff's complaint" and is to limit "its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff.

*Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1273 n. 1 (11th Cir.1999). Thus, "[a] complaint may not be dismissed under Fed.R.Civ.P. 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Rosen v. TRW, Inc.,* 979 F.2d 191, 194 (11th Cir. 1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## III. *Discussion*

### 1. *Statute of Limitations*

Defendants argue that Plaintiff's claims under § 1983 and RLUIPA are barred by the applicable statute of limitations. This Court agrees.

■ A two-year statute of limitations applies to § 1983 actions filed in a Georgia district court. *Mullinax v. McElhenney,* 817 F.2d 711, 715–16 (11th Cir.1987). The Eleventh Circuit has not addressed whether this two-year statute of limitations applies to RLUIPA claims. The Seventh Circuit, however has applied Illinois' two-year statute of limitations to a RLUIPA claim. *See Petra Presbyterian Church v. Village of Northbrook,* 489 F.3d 846, 849–50 (7th Cir.2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 914, 169 L.Ed.2d 786 (2008). *But see Couch v. Jabe,* 479 F.Supp.2d 569, 577 (W.D.Va.2006) (applying the four-year federal catchall statute, 28 U.S.C. § 1658(a), to RLUIPA claims); *United States v. Maui County,* 298 F.Supp.2d 1010, 1012–13 (D.Hi.2003) (same).

■ The continuing violation doctrine holds that a Plaintiff's action is not time-barred where some of the alleged violations occurred within the statutory period, even though other violations did not, because the early acts were part of a continuing wrong. *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1221 (11th Cir.2001). "The critical distinction in the continuing

violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Lovett v. Ray,* 327 F.3d 1181, 1183 (2003). The Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." *Ctr. for Biological Diversity v. Hamilton,* 453 F.3d 1331, 1335 (11th Cir. 2006). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." *Hipp,* 252 F.3d at 1222.

The Eleventh Circuit has held that the continuing violation doctrine did not apply to a plaintiff's claims that prison officials failed to secure and protect his personal property and provide adequate medical care for his heart condition and high blood pressure, dental needs, and scabies infection. *Robinson v. United States,* No. 07–10506, 2007 WL 2988759 at *2 (11th Cir. 2007) (unpublished). The Court, however, held that the doctrine did apply to plaintiff's claims that prison officials delayed his hernia surgery and continued to expose him to scabies after his infection was diagnosed. *Id.*

Additionally, the Eleventh Circuit has held that inmates could not rely on the continuing violation doctrine in § 1983 actions challenging the application of a newly-enacted policy of the Georgia Parole Board to their sentences. *Brown v. Georgia Bd. of Pardons & Paroles,* 335 F.3d 1259, 1261 (11th Cir.2003); *Lovett,* 327 F.3d at 1183; *Taylor v. Nix,* 240 Fed. Appx. 830, 835 (11th Cir.2007) (unpublished). In *Brown,* the plaintiff argued that the decision, under the Georgia Parole

Board's new 1995 policy, to set-off his parole reconsideration until 2007 was a "distinct and separate harm," and, thus, the statute of limitations did not begin to run until 2001, when he was informed that he would not be reconsidered for parole until 2007. 335 F.3d at 1261. The Court rejected this argument, explaining that plaintiff's injury occurred when the Georgia Parole Board first applied its new policy to him in 1995, which was also when plaintiff "could have discovered the factual predicate of his claim." *Id.* at 1261–62.

■ The undersigned finds that Plaintiff's claims are more closely analogous to challenges to the application of a newly-enacted parole policy than to claims that prison officials delayed medical treatment or continued to expose the inmate to the cause of his medical condition even after diagnosis. This Court agrees with Defendants' argument that the basis of Plaintiff's claim is the application of the grooming policy to him, not each individual hair cut. Thus, Plaintiff's injury occurred in 2001, when he should have discovered the factual predicate for his claim. Absent any showing of equitable tolling of the applicable two- or four-year statute of limitations, Plaintiff's claims are time-barred because Plaintiff filed this suit nearly eight years later.

■ "Equitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace v. Kato,* 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Federal courts "have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," but have not allowed "late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Nat'l Cement Co. v. Federal Mine Safety*

*and Health Review Comm'n,* 27 F.3d 526, 530 (11th Cir.1994) (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196(1984)).

■ Plaintiff's state court action was filed in November 2005, more than four years after his injury occurred in March or April of 2001, and, thus, cannot toll the already-expired statute of limitations. Even if true, Plaintiff's contention that prison officials refused to provide him the appropriate form to file a state court action does not warrant equitable tolling because § 9–10–14 does not apply to federal lawsuits. Furthermore, Plaintiff has alleged no facts to suggest that Defendants lulled him into inaction with regard to the filing of a federal civil rights complaint. Equitable tolling, therefore, does not apply to this case. Accordingly, even after accepting as true all of Plaintiff's allegations in his complaint, his § 1983 and RLUIPA claims are subject to dismissal pursuant to Rule 12(b)(6).

After dismissal of Plaintiff's § 1983 and RLUIPA claims, the only claim remaining is Plaintiff's collateral estoppel claim. (Doc. 1 at 6). As discussed below, this Court agrees with Defendants' contentions that this claim should also be dismissed.

2. *Collateral Estoppel*

■ The Eleventh Circuit gives preclusive effect to the judgment of a state court where: (1) "the courts of the state from which the judgment emerged would do so themselves"; (2) "the litigants had a 'full and fair opportunity' to litigate their claims"; and (3) "the prior state proceedings otherwise satisfied 'the applicable requirements of due process.'" *Shields v. Bellsouth Adver. & Publ'g Co.,* 228 F.3d 1284, 1288 (11th Cir.2000). "Under Georgia law, collateral estoppel should be applied when two conditions are met: first, when an action has actually been adjudi-

cated between the same parties; and second, when an issue from that previous action was actually litigated or necessarily was decided for the previous judgment to have been rendered." *Id.* at 1289.

■ In this case, the Defendants were not parties to Plaintiff's criminal action, and the Georgia Department of Corrections' interests were not otherwise represented at the sentencing hearing. The litigants did not have a "full and fair opportunity" to litigate the issue presented in this case, i.e., whether the application of the grooming policy to Plaintiff violated his federal statutory and constitutional rights. Therefore, this Court finds that Defendants are not collaterally estopped from cutting Plaintiff's hair based on the sentencing court's order.

Accordingly, even after accepting as true all of Plaintiff's allegations in his complaint, his collateral estoppel claim lacks merit. Because Plaintiff's claims under § 1983 and RLUIPA are barred by the applicable statute of limitation and his collateral estoppel claim fails, it is unnecessary to address Defendants' remaining arguments in their motion to dismiss.

## IV. *Conclusion*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. 6) is **GRANTED,** and the instant action is **DISMISSED.**

**IT IS SO ORDERED.**

## *ORDER ON MOTION FOR RECONSIDERATION*

Plaintiff, through counsel, filed the instant civil rights action, pursuant to 42 U.S.C. § 1983. On April 28, 2009, this Court granted Defendants' motion to dismiss this action. The matter is currently before this Court on Plaintiff's motion for reconsideration, which was filed by counsel on May 12, 2009. (Doc. 15).

## *Background*

On February 24, 2009, Plaintiff brought this civil action against Brian Owens, the Commissioner of the Georgia Department of Corrections, and Belinda Davis, the Warden of Dooly State Prison, where Plaintiff is incarcerated. (Doc. 1 at 1–2). Plaintiff alleged that he is an "Afrikan Centered Culturalist" or "Rastafarian," and stated that "[r]efraining from cutting one's hair is a vital religious practice in the Rastafarian faith," which he has observed by wearing his hair in uncut dreadlocks since he became a Rastafarian in 1993 until 2001, when defendants forcibly cut his hair. (*Id.* at 2).

Plaintiff further stated that on March 30, 2001, the Fulton County Superior Court "accepted a negotiated plea agreement in criminal action No. 00SC0011489, sentencing [Petitioner] to a term of fifteen years imprisonment." (*Id.*). As part of his negotiated plea, the Fulton County Superior Court ordered that Plaintiff's hair "not be cut," consistent with his religious beliefs. (*Id.* at 2–3). Despite this order and Plaintiff's protests, defendants have repeatedly cut his hair in conformity with the Georgia Department of Corrections' grooming policy. (*Id.*). According to Plaintiff, Defendant Owens is responsible for enforcing this grooming policy, which requires male inmates to have a conventional haircut, with hair no longer than three inches. (*Id.* at 2; Exh. C at 2). The grooming policy allows mustaches, but permits beards only when medically indicated. (*Id.*).

Plaintiff asserted that the grooming policy violates his rights to equal protection and the free exercise of religion under the First and Fourteenth Amendments of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. (Doc. 1 at 6). Plaintiff sought equitable

relief, as well as attorneys fees and costs. (*Id.* at 7–8).

Defendants moved to dismiss Plaintiff's complaint, arguing, in pertinent part, that Plaintiffs claims under both § 1983 and the RLUIPA were barred by the two-year (or possibly four-year for the RLUIPA claim) statute of limitations because the challenged grooming policy was first applied to Plaintiff on his incarceration in March of 2001, and he did not file this suit until February 24, 2009, nearly eight years later. (Doc. 6, brief at 2–4).

Plaintiff responded that his claims were not time-barred because the continuing tort doctrine applied. (Doc. 9 at 3–5). Defendants replied that the continuing tort doctrine did not apply because "it is the application of the grooming policy to Plaintiff that forms the basis of his claim, not that his hair has repeatedly been cut or that each individual hair cut is a separate and distinct injury," and, thus, Plaintiff's injury occurred when the grooming policy was first applied to him in 2001. (Doc. 11, brief at 2–3).

On April 28, 2009, this Court granted Defendants' motion to dismiss, concluding, in relevant part, that the continuing tort doctrine did not apply to Plaintiff's claims, which were time-barred. (Doc. 13 at 7–11).

### Discussion

Plaintiff now asks this Court to reconsider its refusal to apply the continuing tort doctrine to his claims, stating that "the Court's ruling immunizes future constitutional violations merely because similar violations first occurred outside the limitations period." (Doc. 15 at 1). Plaintiff argues that each time his hair is cut, he "suffers a distinct constitutional harm." (*Id.* at 2). Plaintiff contends that his claims are not analogous to challenges to the application of a newly-enacted parole policy, which the Eleventh Circuit has held are one time violations. (*Id.* at 3). Rather, Plaintiff asserts that his allegations are

more like claims that prison officials continued to expose an inmate to the cause of his medical condition even after diagnosis, to which the Eleventh Circuit has applied the continuing tort doctrine. (*Id.* at 3–4). Plaintiff states that he seeks injunctive relief, not damages, and the harm he suffers "is on-going and has not been eliminated." (*Id.* at 5).

Defendants respond that this Court correctly refused to apply the continuing tort doctrine because Plaintiff was aware of the factual basis for his claims beginning in 2001, when the grooming policy was first applied to him. (Doc. 16, brief at 2–3). Defendants point out that "Plaintiff does not have a medical condition that was worsened over time, nor does he allege separate and distinct acts that amount to continued mistreatment by prison officials." (*Id.* at 3). Defendants state that "[t]here is no separate factual predicate for each successive haircut; rather it is the foreseeable consequence of the grooming policy imposed by the Georgia Department of Corrections." (*Id.* at 4).

In reply, Plaintiff reiterate his contention that "each hair cut constitutes a separate unconstitutional act in violation of [his] free exercise rights." (Doc. 17 at 1). Plaintiff maintains that his "constitutional rights will be violated again in the future." (*Id.* at 2).

 Federal Rule of Civil Procedure 59(e) expressly authorizes a motion to alter or amend a judgment after its entry. "[T]here are three primary grounds for reconsideration of a judgment: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *United States v. Battle,* 272 F.Supp.2d 1354, 1357 (N.D.Ga.2003). "A motion to reconsider must demonstrate why the court should reconsider its decision and set forth facts or law of a strongly

convincing nature to induce the court to reverse its prior decision." *Id.*

Plaintiff does not argue that his motion for reconsideration is based on an intervening change in controlling law or the availability of new evidence. Furthermore, Plaintiff advances no argument of "a strongly convincing nature" to cause this Court to reconsider its dismissal of this civil action.

The continuing violation doctrine holds that a Plaintiff's action is not time-barred where some of the alleged violations occurred within the statutory period, even though other violations did not, because the early acts were part of a continuing wrong. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir.2001). "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir.2003). The Eleventh Circuit has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir.2006). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." *Hipp*, 252 F.3d at 1222.

The Eleventh Circuit has held that inmates could not rely on the continuing violation doctrine in § 1983 actions challenging the application of a newly-enacted policy of the Georgia Parole Board to their sentences. *Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir.2003); *Lovett*, 327 F.3d at 1183; *Taylor v. Nix*, 240 Fed.Appx. 830, 835 (11th Cir.2007) (unpublished). In *Brown*, the plaintiff argued that the decision, under the Georgia Parole Board's new 1995 policy, to set-off his parole reconsideration until 2007 was a "distinct and separate harm," and, thus, the statute of limitations did not begin to run until 2001, when he was informed that he would not be reconsidered for parole until 2007. 335 F.3d at 1261. The Court rejected this argument, explaining that plaintiff's injury occurred when the Georgia Parole Board first applied its new policy to him in 1995, which was also when plaintiff "could have discovered the factual predicate of his claim." *Id.* at 1261–62.

Plaintiff's claims are analogous to challenges to the application of a newly-enacted parole policy, and, thus, the continuing tort doctrine does not apply. The basis of Plaintiff's claim is the application of the grooming policy to him, not each individual hair cut. Thus, Plaintiff's injury occurred in 2001, when he should have discovered the factual predicate for his claim. The fact that Plaintiff only seeks prospective injunctive relief and not damages for past violations does not alter this Court's conclusion that Plaintiff has failed to allege a continuing tort. *See Brown*, 335 F.3d at 1260 (rather than damages, the plaintiff "sought to have the Parole Board ordered to reconsider him immediately for parole and to apply hereinafter the three-year reconsideration rule which was in effect at the time of his original conviction").

### Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion for reconsideration (Doc. 15) is **DENIED.**